## Case No. 11,302.

### POST et al. v. TAYLOR COUNTY.

[2 Flip. 518.] [2]

Circuit Court, D. Kentucky. Nov. 21, 1879.

BONDS ISSUED BY COUNTY IN AID OF A RAILROAD — JURISDICTION — PRIVITY — COLLECTION OF TAXES—THE COURT WILL MAKE ALL SUCH ORDERS AS MAY BE NECESSARY TO ATTAIN THIS END —PRACTICE—OTHER PROPERTY HOLDERS—HOW MADE PARTIES — ANCILLARY PETITION — JUDGMENT AND OTHER PROCESS.

1. Bonds issued in aid of a railroad by a county court, authorized so to do by law, are binding

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]
2 [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

obligations, and while there is no such privity between the purchasers of said bonds and the tax debtors as would authorize a suit at law, such a case comes within well-established equity jurisdiction.

2. If no one can be found able and willing to collect the taxes, when loaned by the county court to pay creditors who have obtained a decree on interest coupons, on bill filed this court will entertain jurisdiction.

3. In such case the court will direct the payment of taxes so assessed into the registry, to be applied in satisfaction of complainants' decree; and against each debtor, who shall not so pay within the time specified in the order, an execution will issue.

4. Should the property of parties, made defendants, be not sufficient to pay the amount due complainants, on application therefor, a receiver will be appointed, authorized to collect taxes assessed for the purpose against other property holders, not parties to this cause. And should they not pay within a reasonable time, the receiver will be instructed to bring them before the court by ancillary petition.

5. In such case a decree will be entered against them for the amount so owing and for costs, and payment will be coerced by such other further appropriate decrees and process as may seem proper and necessary.

At law.

Henry C. Pindell, for complainants.
Barnett & Noble, for defendants.

BAXTER, Circuit Judge. It appears from the pleadings in the case that the defendant, Taylor county, issued its coupon bonds to aid in the construction of the Cumberland & Ohio Railroad. These bonds were put upon the market and sold. By the terms of the act under which they were issued the county court of that county was authorized and required, from time to time, to assess and collect taxes, to be applied in payment of the interest on said bonds as the same matured. But this legal duty thus imposed by law was not performed. The interest not having been paid, the complainants, who were the holders of some of said bonds, brought suit and recovered judgment therefor in this court. On this judgment execution was issued and duly returned nulla bona. The county owned no property on which a levy could be made. Thereupon, and upon proper application by complainants, writs of mandamus, nisi and peremptory, were issued, commanding the county court, charged with the duty, to assess taxes for the payment of complainants' judgment; and in obedience to the mandate of this court it made and reported said assessment. But the county officers, in answer to said mandate, averred "that, after sincere and diligent effort, it (the county court) was unable to find any qualified person who would accept the office of collector, give the bond required by law, and undertake to collect said tax."

The court then, as we understand from the statement of the facts made in argument, appointed a receiver, vested with authority and charged with the duty of collect-

ing said tax. But soon after entering upon the execution of his office he was induced by threats of violence to resign his position.

Complainants thereupon filed this bill, to which Taylor county and several of the more prominent tax-debtors thereof were made defendants. Copy of the assessment, as made, is exhibited with, and made a part of the bill, showing the amount assessed against each property holder. Complainants' prayer is that the said several tax-debtors, assessed as aforesaid, be required, by appropriate orders and decrees, to be made by this court in this case, to pay the amounts so severally assessed against them, into court in discharge of their said judgment.

Defendants answer and fully admit the allegations and equity of the bill. This admission is followed by a very frank and manly avowal on the part of the tax-debtors brought before the court, that they are all able, ready and willing to pay the amounts so assessed against them, provided there is some competent person to whom the payments can be legally made. But they go on to suggest and rely upon quite a number of legal barriers, which as they are advised, prevent them from doing so. They insist:

First. That the assessment was not made at the time and in pursuance of the laws providing for the assessment of taxes by the county court.

Second. If the assessment was valid, there is no privity between them and complainants, and hence they deny that, "by reason or virtue of said assessment or levy, or both, they became indebted to said county in the sum so levied, or in any other sum," for complainants' use or benefit.

Third. They contend that by law none but a collector duly appointed, who shall execute bond, etc., is authorized to receive and execute receipts for such taxes; and,

Fourth. They say "that by and under the provisions of the charter of said railroad company," each and every tax-payer "is, upon the payment of such tax, a conditional stockholder of the capital stock of said company to the amount of the tax so paid; that before any such tax-payer is under any legal obligation under said charter to pay any such tax, the collector of such tax shall tender to him a receipt for the amount thereof, and upon such payment said tax-payer can legally demand, and is entitled to receive from said railroad company, on surrender of such receipt, certificates of stock in said company equal in amount to the tax paid for which a receipt is surrendered; and no tax-payer is under any legal obligation to pay such tax unless thereby he is, by the collection of said tax, armed with the means therefor of becoming a stockholder in said company; and that no collector attempted to be appointed by this court for such purpose could furnish the tax-payer with a receipt therefor, which would entitle him to demand and receive stock in said company."

These defenses are supplemented by repeated and very earnest denials of the power of this court to give a remedy in the premises. The avowed willingness of the defendants to pay is heartily commended. The justice and validity of complainants' demands are explicitly admitted. The bonds were issued in pursuance of law, at the request and for the benefit of the people of the county. The money realized from the sale of these bonds was applied to the construction of a great public enterprise from which they expect to derive pecuniary and other advantages. Of course they are, as they ought to be, ready and willing to pay, and are only restrained from paying because there is, as they are advised, no one legally competent to receive the taxes admitted to be due from them. Their case calls for commiseration. A breach of plighted public faith is a calamity to any community. While it does injustice to the creditor, it dishonors the delinquents. If persisted in it will —slowly it may be, but certainly—contaminate the public morals, and superinduce untold pecuniary and social evils. The willingness, therefore, of defendants to pay, is dictated as well by a sagacious regard for their own interest as by a love of justice and an honest desire to pay their creditors, and they will, I know, be gratified at the announcement that, in the opinion of this court, the legal difficulties, which they by their answer suggest as being in the way of a prompt payment of the taxes assessed against them, are more fanciful than real. The bonds from which the coupons were taken, constituting the foundation of the decree rendered by this court, are valid obligations; at least it has been so adjudicated, and it is now too late for inquiry into that question. The taxes sued for were levied in obedience to the mandate of this court, and this question is res adjudicata also. By the terms of the law under which they were issued it is the duty of the county court to levy and collect a tax from the property of the citizens of the county and apply the same to the payment of the interest, for which complainants have judgment. This was the contract. The pleadings show that the officers of the county sincerely and in good faith endeavored to discharge the duty thus enjoined upon them. But they have been unable to do so. No one competent will give bond and undertake the collection. It is rather an anomaly that, in a community "able, ready and willing" to pay taxes to meet its public obligations, no one can be found who is competent and willing, for a just compensation, to collect and apply the same. But such we see, from the record in this case, is the existing condition of things in Taylor county. They would if they could, but they cannot. This court undertook to lift them out of their embarrassment by the appointment of a receiver to do what the county court was, for the reasons stated, unable to do. But by threats of violence he was deterred from performing his duties. As a der-

nier ressort, complainants filed this bill, in which they brought some of the tax-debtors of the county personally before the court. The case made brings it within well-established equity jurisdiction. Equity regards the substance of things, and eschews the technicalities of the common law. There is no such privity between complainants and the defendant tax-debtors as would authorize a suit at law. No such privity is necessary to the maintenance of this suit. Under the law it is the legal duty of the county court to assess the taxes and apply the same in payment of the interest as it accrued on the county bonds. This legal duty imposed on that tribunal a trust for the benefit of the county creditors. But for the reasons stated it could not execute the trust.

Upon this admitted state of the case the complainants have a clear equity to come into this court and invoke its assistance to force the tax-debtors to pay the county, to the end that the county may pay complainants. Such is the theory upon which complainants' equity rests, and which gives jurisdiction to this court. Having on this ground obtained jurisdiction, the court is bound to do full justice, and will, in the exercise of its judicial authority, direct the payment of the taxes so assessed into the registry of the court, to be applied in satisfaction of complainants' decree. Parties thus paying will be acquitted and fully discharged from all further liability on that account. There is not the slightest danger that they, or any of them, will ever be called upon to repay the same; and payment thus made will insure to the payers the same interest in the capital stock of the railroad company, conferred on them by the charter thereof, as if made to one acting as county collector. Without pursuing the discussion further, we are of the opinion that the several defenses pleaded and relied on in the answer are untenable and immaterial. They are impertinent, and complainants' exception thereto will be sustained. A decree will be entered authorizing and requiring each tax-debtor to be made a defendant in this case, to pay to the clerk of this court, within ninety (90) days, the amount of tax assessed against him as shown by the copy of the assessment roll filed, and in the event he fails to do so an execution will issue for the same.

If it shall turn out, as it is manifest it will, that the amount due from the defendants is inadequate to pay complainants' decree, and complainants ask for it, another receiver will be appointed and authorized to collect the taxes assessed for the purpose against other property holders of the county, not parties to this cause. They will be allowed reasonable time in which to pay. If they shall not, within reasonable time, pay the sums severally assessed against them, the receiver will be instructed to bring them all before the court by an ancillary petition to be filed in this cause, when a decree will be rendered against each of them for the amount so owing by

them, with costs, and collection will be coerced by such further appropriate decrees and process as may seem to the court proper and necessary.

This, we think, may be done by attachment for contempt, or by execution to the marshal for the collection of the same.

It may not be improper to say that this court feels bound, if necessary, to exhaust all its powers in the enforcement of its lawful decrees, and it will not hesitate to exert them.